**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Katalin Bloodgood-Loper,<br><br>    Plaintiff<br>v.<br><br>Lenard Loper, et al.,<br><br>    Defendants<br><br>ALL OTHER CLAIMS AND PARTIES | Case No.: 2:22-cv-01320-JAD-BNW<br><br>**Order Granting Motions to Dismiss, Denying Motions for Temporary Restraining Order and Sanctions, and Closing Case**<br><br>[ECF Nos. 41, 43, 45, 48, 51, 65, 74, 75, 77] |

Pro se plaintiff Katalin Bloodgood-Loper filed this action against her husband, Charles Utz Loper; his father Lenard Loper; Lenard's[1] company LVL Investments, Inc.; and Eighth Judicial District Judge Michele Mercer for circumstances arising from Katalin's and Charles's state-court divorce proceedings and Katalin's eviction from the home that Charles rented from Lenard. Charles filed a cross-claim against "Lenard Loper et al" in which he details the various abuses and transgressions his father has committed against him over several decades. Lenard and LVL move to dismiss Katalin's complaint and Charles's cross-claim, arguing that neither states a federal claim. Mercer moves to dismiss Katalin's claims against her, arguing that she is entitled to absolute judicial immunity. Because I find that Katalin and Charles have failed to state a federal cause of action that would entitle them to relief in this court, I grant Lenard and LVL's motions and dismiss all claims and cross-claims against those defendants. And because Mercer is entitled to judicial immunity for her actions in the parties' state-court proceedings, I

---

[1] Because they share a last name, I refer to Katalin, Charles, and Lenard by their first names. No disrespect is intended by doing so.

grant her motion too.  I dismiss all claims and cross-claims without leave to amend because the myriad filings in this case demonstrate that neither party can state a claim for federal relief under the circumstances alleged, so amendment would be futile.  I also deny Katalin's attempts to amend her complaint and overrule her objection to the magistrate judge's order denying one of those attempts.  I deny Charles's motion for sanctions against Lenard's attorneys because he didn't comply with Federal Rule of Civil Procedure 11's strict safe-harbor provision, and I deny Lenard's motion for sanctions against Charles as moot because his claims have been dismissed.  Finally, I deny Charles's motion to seal and I strike the exhibits attached to that motion.

## Background

### A. Katalin's complaint

Katalin Bloodgood-Loper filed this action in August 2022, initially seeking to enjoin her state-court divorce proceedings and complaining that her husband Charles and his father Lenard evicted her from Charles's rental home.[2]  She complained that Charles removed her possessions from the home while she was away and took her name off the access list for the home's gated community without notice.[3]  When she tried to "invoke her [procedural-due-process] rights" in her divorce proceedings, state-court Judge Mercer ignored her.[4]  Katalin listed her claims as "breach of duty, gross negligence, [and] intentional infliction of emotional and bodily pain."[5]  She claimed that she was not seeking monetary damages, "just a stay of divorce proceedings and recusal."[6]

---

[2] ECF No 1.
[3] *Id.* at 7.
[4] *Id.*
[5] *Id.*
[6] *Id.* at 11.

After a few rounds of unsolicited amendments, Katalin's fourth-amended complaint was filed on October 19, 2022.[7] In it, she invokes federal-question jurisdiction and states that she is bringing claims for civil-rights violations under 42 U.S.C. §§ 1983 and 1985 and for violations of the Fair Housing Act (FHA), "42 U.S.C. §[§] 3601–3619."[8] She requests the appointment of an attorney in her family-law case, recusal of Judge Mercer, and a stay of her divorce proceedings.[9] She also recounts the chain of events that led to Charles's initiation of divorce proceedings, her eviction[10] from the rental home, and her attempts to fight that eviction.[11] Katalin explains that on June 16, 2021, after she was removed from the home, Charles was served with a "Five-Day Notice to Perform Lease Condition or Quit," which accused Charles of violating the unauthorized-tenant, nuisance, and tenant-default provisions of his lease agreement.[12] Katalin avers that it was a violation of her civil rights and fair-housing laws to kick her out of her dwelling, especially in the midst of a global pandemic.[13] She believes that Judge Mercer has ignored her complaints, has "never once explained the reasoning behind her

---

[7] ECF No. 40; *see also* ECF No. 39 (order explaining Katalin's filings and cleaning up the docket).

[8] ECF No. 40 at 3.

[9] *Id.* at 5.

[10] It appears that Katalin may not have been formally "evicted" from the home because she acknowledges that she was not listed as a lessee of the property or acknowledged in the rental agreement in any way. I refer to Katalin's removal from the property as an "eviction" because that is the way she frames the issue.

[11] *See generally* ECF No. 40.

[12] *Id.* at 13. Katalin attached the five-day notice, the eviction complaint, and the lease agreement between Lenard and Charles to her complaint. ECF No. 40-1 at 18–31.

[13] ECF No. 40 at 16.

3

decisions," and has criticized Katalin for having a purely economic interest in her husband and his "deep pockets."[14]

### B.     Charles's cross-claim

In October 2022, Charles filed an answer to Katalin's complaint and a cross-claim against "Lenard Loper et al."[15] He states that Lenard "has consistently and continually to this day used the following tactics to [c]oerce and [t]errorize [his] person and wife over the past 10 years: (1) False Imprisonment; (2); Misappropriation of Funds; (3) Refusal to P[er]form on Contracts, Verbal and Written; (4) Gross Negligence of Fiduciary Responsibility; (5) Wrongful Eviction; (6) Abuse of Disabled Tenant; (7) Violations of American Disabilities Act; (8) Abuse of Disabled Employee; (9) Wrongful Termination; (10) Perjury."[16] Charles requests that Lenard and LVL give him and Katalin money to pay for their attorneys, living expenses, and "all outstanding liabilities;" "to cease and desist threat[en]ing to evict" him, and "grant [him] separate possession" of the rental home "until the conclusion of" this case.[17] The remainder of Charles's cross-claim narrates all of the negative interactions that he believes he's endured from his father, other family members, and LVL employees over at least the last decade.[18] He alleges that Lenard abused him and his mother; his family on various occasions would give him "the silent treatment" until he sought treatment for alcoholism; Lenard financially coerced him by threatening to evict him, fire him, or withhold his earnings from LVL (Lenard's company that Charles worked for); and that Lenard's bad actions have "been the underlining cause of most, if

---

[14] *Id.* at 15.
[15] ECF No. 28 at 1.
[16] *Id.* at 3.
[17] *Id.* at 4.
[18] *See generally id.*

not all, of the instability and chaos that has caused [his] health to spiral into a chronic autoimmune disorder."[19]

### C. Pending motions

Judge Mercer moves to dismiss Katalin's claims against her, arguing that she is entitled to absolute judicial immunity.[20] Lenard and LVL move to dismiss Katalin's fourth-amended complaint and Charles's cross-claim, arguing that neither has stated a federal claim entitling them to relief.[21] In response, Katalin filed a "motion to join cross-claim and temporary restraining order; [proposed] complaint in intervention for violations of" the disability-discrimination provisions of the FHA, "The Cares Act," and for "Retaliation, Interference, Coercion, and Intimidation."[22] The motion was docketed twice because it appears to be requesting multiple forms of relief, and the magistrate judge denied the portion of the motion concerned with joining a cross-claim, finding that "upon review, [the motion] appears to be an amended complaint."[23] The magistrate judge reminded Katalin that, "to file an amended complaint, she must file a motion to amend her complaint and attach a proposed amended complaint."[24] Katalin objects to the magistrate judge's ruling, arguing that her "motion to join is a result of a recent threat and coercion . . . ongoing, recurring, unlawful offense under the same

---

[19] *See generally id.* at 12–23.
[20] ECF No. 45.
[21] ECF No. 41 (motion to dismiss Charles's cross-claim); ECF No. 43 (motion to dismiss Katalin's fourth-amended complaint).
[22] ECF No. 47; ECF No. 48.
[23] ECF No. 49.
[24] *Id.*

statutes in [her] original complaint."[25] And the portion of the order docketed as seeking a temporary restraining order remains pending.[26]

In response to Lenard and LVL's motions, Charles filed a motion to sanction Lenard's attorneys under Federal Rule of Civil Procedure (FRCP) 11 for various motions in this case, arguing that they were filed as a "delay tactic" or failed to address the correct legal standards.[27] The defendants respond that Charles failed to comply with FRCP 11's strict safe-harbor provision and that, regardless, Charles's arguments for the imposition of sanctions lack merit.[28] On January 17, 2023, the Lenard defendants filed their own Rule 11 sanctions motion against Charles, arguing that Charles's cross-claim "is objectively baseless, unreasonable[,] and improper."[29]

On January 10, 2023, Katalin and Charles jointly submitted an "emergency motion against opposing counsel and [the] Loper defendants for ongoing violations of [the] Fair Housing Act listed as 42 U.S.C. § 3617."[30] They contend that Lenard has again threatened eviction unless Charles ceases "all defamatory comments[] and rescind[s] the false, outrageous, inflammatory[,] and derogatory statements[ he] continue[s] to include in [his] public filings."[31] They attach a letter from Lenard's lawyers, which recounts that Charles was previously evicted from the home but had moved back in and has been unlawfully residing there for several months.[32] The letter

---

[25] ECF No. 51 at 2.
[26] ECF No. 48.
[27] ECF No. 65.
[28] ECF No. 68.
[29] ECF No. 75.
[30] ECF No. 74.
[31] *Id.* at 3 (citing letter from Lenard's attorneys, attached at ECF No. 74-4).
[32] ECF No. 74-4 at 1.

explains that, despite Charles's unlawful possession, his parents "would like to work this issue out amicably" and states that, "if [Charles wants] to stay in the house, [he] must" cease all defamatory statements and "show [his] family that [he] is making meaningful effort[s] to address [his] addiction."[33] Katalin and Charles maintain that this letter violates 42 U.S.C. § 3617, which makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of . . . any right granted or protected by" the FHA.[34] And on January 17, 2023, Charles filed a "notice of continuing 42 U.S.C. § 3617 violations" with an accompanying motion to seal more than 100 pages of exhibits concerning Lenard's and LVL's finances.[35]

## Discussion

### A. Judge Mercer is entitled to absolute judicial immunity from Katalin's suit.

"Absolute immunity is generally accorded to judges . . . functioning in their official capacities."[36] This applies to both civil actions for damages, as well as for equitable relief.[37] "[I]t is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in [her], shall be free to act upon [her] own convictions, without apprehension of personal consequences."[38] While this immunity "covers only those acts [that] are 'judicial' in nature," a judge "will not be deprived of immunity because the action [s]he took was in error, was done maliciously, or was in excess of [her] authority;

---

[33] *Id.* at 2.

[34] ECF No. 74 at 3 (quoting 42 U.S.C. § 3617).

[35] ECF No. 76; ECF No. 77; ECF No. 78.

[36] *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004) (citing, *inter alia*, *Stump v. Sparkman*, 435 U.S. 349, 364 (1978)).

[37] *See Mireles v. Waco*, 502 U.S. 9, 9 (1991); *Mullis v. Bankr. Ct. for the Dist. of Nev.*, 828 F.2d 1385, 1394 (9th Cir. 1987).

[38] *Bradley v. Fisher*, 80 U.S. 335, 347 (1871).

rather [s]he will be subject to liability only when [s]he acted in the clear absence of all jurisdiction."[39]

Every accusation against Judge Mercer in Katalin's operative complaint concerns comments and actions the judge made while presiding over state-court proceedings and thus Judge Mercer is entitled to judicial immunity. Katalin contends in response to Mercer's motion that her real issue is with the judge's apparent determination that she lacked jurisdiction to hear Katalin's due-process and fair-housing claims.[40] She claims that Judge Mercer "abrogated her 'Duty to Sit'" by "stating that she lacked ALL jurisdiction," so absolute immunity does not apply because Judge Mercer made no findings of fact with respect to Katalin's due-process or fair-housing allegations.[41]

But Katalin's belief that Judge Mercer's jurisdictional determination somehow deprived the judge of immunity is misguided. Absolute immunity does not apply if a judge acts "in the clear absence of all jurisdiction."[42] And it is a basic precept of American law that trial courts have jurisdiction to determine their own jurisdiction.[43] So Judge Mercer acted within her jurisdiction when she decided that she lacked jurisdiction to hear Katalin's due-process and fair-housing arguments, which she deemed unrelated to the divorce proceedings before her.[44] And all

---

[39] *O'Neil v. City of Lake Oswego*, 642 F.2d 367, 369 (9th Cir. 1981) (citing *Stump*, 435 U.S. at 360–64).

[40] ECF No. 56 at 2.

[41] *Id.* at 3.

[42] *O'Neil*, 642 F.2d at 369.

[43] *See Dutta v. State Farm Mut. Auto. Ins. Co.*, 895 F.3d 1166, 1171 n.3 (9th Cir. 2018); *In re Parental Rights as to S.M.M.D.*, 272 P.3d 126, 130 (Nev. 2012) (noting that courts "inherently possess[]" "jurisdiction to determine jurisdiction").

[44] Katalin also contends that Judge Mercer failed to "elaborate whether it was personal or subject[-matter]" jurisdiction that she lacked. ECF No. 56 at 7. In these circumstances, the distinction is immaterial. That Judge Mercer was acting in her judicial capacity when she

of the other allegations in Katalin's complaint directly concern Judge Mercer's actions in state-court proceedings. So I find that Judge Mercer is entitled to absolute judicial immunity for the actions alleged in Katalin's complaint, and I dismiss with prejudice the claims against her.

**B.  Katalin's remaining claims do not entitle her to any relief in federal court.**

Federal pleading standards require a plaintiff's complaint to include enough factual detail to "state a claim to relief that is plausible on its face."[45] This "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation";[46] plaintiffs must make direct or inferential factual allegations about "all the material elements necessary to sustain recovery under *some* viable legal theory."[47] A complaint that fails to meet this standard must be dismissed.[48] But federal courts must also interpret all pleadings "so as to do justice."[49] And the Supreme Court has consistently held that pro se pleadings are "to be liberally construed."[50] A pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief."[51] If the court grants a motion to dismiss for failure to state a claim, leave to

---

declined to exercise jurisdiction—whatever the type—is enough to afford her immunity over that decision.

[45] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).
[46] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[47] *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).
[48] *Twombly*, 550 U.S. at 570.
[49] Fed. R. Civ. P. 8(e).
[50] *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (citation omitted).
[51] *Id.* (cleaned up).

amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment.[52]

Katalin's remaining claims against Lenard and LVL essentially boil down to dissatisfaction with the way her and Charles's eviction and divorce proceedings were handled. But Katalin does not allege any facts that elevate this family dispute to one involving any federal causes of action. And because Katalin has shown that she cannot cure these deficiencies with amendment and has attached documents to her complaint negating her version of events, I dismiss her complaint in its entirety and without leave to amend.

### 1. The remaining defendants are private actors and thus cannot be held liable under § 1983.

To state a § 1983 claim, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged violation was committed by a person acting under color of state law. "Private persons, jointly engaged with state officials in the challenged action, are acting [] 'under color' of law for purposes of § 1983 actions."[53] And a "private party's joint participation with state officials in the seizure of disputed property is sufficient to characterize that party as a 'state actor' for purposes of the Fourteenth Amendment."[54] But "merely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with a judge."[55] It is only when

---

[52] *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

[53] *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1966)).

[54] *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 941 (1982).

[55] *Dennis*, 449 U.S. at 29.

private parties "corruptly conspire" with a judge in connection with unlawful conduct that they are "acting under color of state law."[56]

Katalin has alleged no facts indicating that Lenard and LVL conspired with any state actor to evict her or Charles. Indeed, her allegations demonstrate that the police were only tangentially involved in these disputes when Katalin herself called them to report what she believed to be illegal acts.[57] Otherwise, she alleges that Charles removed her belongings and "removed [her] permanent access from the [residential community's] guard gate" when she was not present.[58] And by alleging that Judge Mercer declined jurisdiction over Katalin's eviction-related complaints, Katalin has conceded that Judge Mercer did not take any action to assist the defendants in evicting her or violating her rights. That Judge Mercer was not involved in any events related to Katalin's removal from the property at issue is fatal to any claim that Lenard, LVL, or Charles conspired with a judicial actor in order to evict her. In short, none of Katalin's allegations, even liberally construed, supports a claim for joint action that would confer § 1983 liability on the private actors involved here. So I dismiss Katalin's § 1983 claims because she has not alleged and cannot allege any unlawful conduct by state actors to support such a claim.

---

[56] *Id.*

[57] *See, e.g.,* ECF No. 40 at 10 (noting that, after being evicted, Katalin "tried again to gain access through the guard gate with the assistance of the LVMPD"); 11 (noting that she copied LVMPD in correspondence concerning a "CDC eviction memorandum" that she sent Lenard and Charles); 12 (alleging that she called LVMPD again for help returning to the home). Katalin also mentions that Charles called the police at one point to have Katalin "falsely arrested for domestic violence." *Id.* at 9. But Katalin notes that the officer "gave [Charles] a warning" but did nothing to assist in the eviction or removal of Katalin's property.

[58] *Id.* at 10.

### 2. Katalin has not plead any facts to support a civil-conspiracy claim under § 1985(3).

"To state a cause of action under § 1985(3), a complaint must allege (1) a conspiracy, (2) to deprive any person or a class or persons of the equal protection of the laws, or of equal privileges and immunities under the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage[,] or a deprivation of any right or privilege of a citizen of the United States."[59] The conspiracy "must be motivated by some racial, or perhaps otherwise class-based, invidiously discriminatory animus."[60] The Ninth Circuit has "extended § 1985(3) to protect non-racial groups only if 'the courts have designated the class in question a suspect or quasi-suspect classification requiring more exacting scrutiny or . . . Congress has indicated through legislation that the class requires special protection.'"[61]

Liberally construed, Katalin appears to argue that she was discriminated against because of her "familial status" as Charles's wife.[62] She states that she believes she is entitled to reside at the home that lists only Charles as a tenant because she is his wife—not that Lenard or any other individual conspired to discriminate against her because she is married. She points to no constitutional or federal legal right that would require a landlord to allow a spouse who is not listed on the lease agreement to reside in that rental unit. At most, Katalin alleges that the defendants do not want her to live in the home and have acted to keep her from residing there.

---

[59] *Gillespie v. Civiletti*, 629 F.2d 637, 641 (9th Cir. 1980).

[60] *United Broth. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 829 (1983).

[61] *Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005) (cleaned up).

[62] *See* ECF No. 40 at 12 (noting that Katalin "emailed the HOA, claiming that it was discrimination to exclude [her] from [her] residence as [she] was married," claiming that this constituted "familial status" discrimination under Nevada law).

12

While I empathize with Katalin's situation, she has not alleged facts showing that the defendant's actions to keep her out violate any federal law or constitutional right. If Katalin believes that she has been wrongfully evicted based on the circumstances she describes here, her recourse will be best found in state court.[63] But because she has not alleged any of the elements of a § 1985(3) claim, I dismiss it here.

### 3. Katalin cannot state a Fair Housing Act claim.

To state a claim for discrimination under the FHA, a plaintiff must sufficiently allege that "(1) [her] rights are protected under the FHA; and (2) as a result of the defendant's discriminatory conduct, plaintiff has suffered a distinct and palpable injury."[64] Katalin does not identify in her complaint what protected rights she believes were violated by the defendants. In her response—which reads as yet another attempt to amend her complaint—she claims that she has been discriminated against based on her familial status and states that she was discriminated against because "I am a wife."[65] Liberally construing her complaint to include such allegations, Katalin still fails to demonstrate how any of the actions taken against her were because of her familial status. Rather, she seems to believe that she has some communal right to her husband's tenancy, despite acknowledging that she is not named on the property's lease agreement. Katalin also attaches Charles's lease and his eviction notice, which lists as one reason for the eviction that Charles was violating the lease agreement's prohibition on unauthorized guests. Katalin fails to point to any constitutional or federal right indicating that her spousal relationship with an

---

[63] Katalin contends that she filed this suit in federal court because Judge Mercer declined jurisdiction over her allegations in her divorce proceedings. But nothing prevents Katalin from opening a new case—separate from her divorce proceedings—in a state court that may have jurisdiction to hear her complaint.

[64] *Harris v. Itzhaki*, 183 F.3d 1043, 1051 (9th Cir. 1999).

[65] ECF No. 55 at 9.

authorized tenant entitles her to her own tenancy rights, and I know of no federal laws that confer such a right. So Katalin's FHA claim based on familial-status discrimination must be dismissed.

Katalin's response also includes an FHA claim under 42 U.S.C. § 3617, which makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of . . . any right granted or protected by" other sections of the FHA.[66] But because she has not identified any FHA right that the defendants have interfered with, she cannot state a claim under this section either. So I dismiss Katalin's FHA claims.[67]

### 3. Further leave to amend would be futile.

Four days after Lenard and LVL filed their motion to dismiss Katalin's fourth-amended complaint, Katalin filed a "motion to join cross-claim and temporary restraining order: proposed complaint in intervention for violations of" the FHA and the Cares Act.[68] The motion appears on the docket twice because it seemed to request two different types of relief. The magistrate judge denied the motion to the extent it sought to amend Katalin's complaint, finding that she did not follow the requirements to seek amendment in this court.[69] Katalin objects to the magistrate

---

[66] 42 U.S.C. § 3617.

[67] Katalin also repeatedly mentions "The Cares Act" and implies that she is attempting to bring a claim under that law because she was evicted during the COVID-19 pandemic. The vast majority of the courts to decide the question have determined that the CARES Act—legislation passed to ease the economic impact of the global pandemic—did not create a private right of action. *See Betancourt v. Total Prop. Mgmt.*, 2022 WL 2359286, at *3 (E.D. Cal. 2022) (collecting cases). I am persuaded by the reasoning of those courts and adopt it here. Because the CARES Act does not confer a private right of action, Katalin cannot invoke federal jurisdiction under it.

[68] ECF No. 47; ECF No. 48.

[69] ECF No. 49.

14

judge's order, arguing that she was not attempting to amend her complaint, but was adding a claim based on new developments of her case.[70]

A district judge may reconsider any non-dispositive matter that has been finally determined by a magistrate judge "when it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."[71]  Katalin fails to show how the magistrate judge's denial of her motion was erroneous.  If she wished to add new claims to her complaint, she was required to first seek leave from the court and attach a proposed complaint that is "complete in and of itself without reference to" any prior complaints.[72]  Katalin failed to do so, so the magistrate judge's denial of her attempts to add piecemeal claims to her complaint was not in error.  So I overrule Katalin's objection.

However, because I have determined that allegations in Katalin's fourth-amended complaint fail to state a claim, and because the same motion containing her proposed complaint is currently pending before me, I consider her new claims to the extent that they may warrant granting Katalin another chance to amend her complaint and state a claim.  In her new proposed pleading, Katalin advances a new claim for FHA discrimination under the provision prohibiting discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling . . . because of a handicap of (A) that person; (B) a person residing in or intending to

---

[70] Katalin separately states in her complaint that her "claims are breach of duty, gross negligence, [and] intentional infliction of emotion and bodily pain." ECF No. 40 at 7.  She does not explain which facts she alleges for those claims or attempt to show that she has pled their necessary elements.  Regardless, because I have dismissed all of Katalin's federal claims, I decline to exercise supplemental jurisdiction over any state-law claims that she intended to bring.

[71] L.R. IB 3-1(a).

[72] L.R. 15-1.

reside in the dwelling after it is sold, rented[,] or made available; or (C) any person associated with that person."[73]

Liberally construed, Katalin identifies her husband's alcoholism as the "handicap" that qualifies for FHA protections and claims that Lenard "treats [her] husband as an incompetent adult incapable of making decisions or allowed to have any rights at all, including the right to be married as well as the right to enter rehab on his own free will."[74]  But Katalin fails to allege any facts showing that Lenard evicted Charles or took any other action prohibited under the FHA *because* he is an alcoholic or because he has any other disability.[75]  Nor can she.  Katalin has provided a fairly robust account of the transgressions that she believes the Loper family has committed over the last couple of years and has attached documentation of the legal action taken against her and Charles.  At this stage, I find that it would be futile to allow Katalin another opportunity to amend her complaint to attempt to state any further FHA or other federal claims.[76]  So I deny Katalin's separate "motion to join cross-claim and temporary restraining order" and dismiss her claims without leave to amend.

**C.  Charles's cross-claims are dismissed without leave to amend.**

Charles's cross-claims also fail to state any claim for federal relief.  The only claim he lists that could fall under federal jurisdiction is for "violations of the American[s with]

---

[73] 42 U.S.C. § 2604(f)(2)(A–C).

[74] ECF No. 48 at 8.

[75] Throughout the pleadings, Katalin and Charles refer to an unidentified autoimmune "skin condition" that Charles has suffered from for some time. *See e.g.*, ECF No. 48 at 5.  But Katalin does not mention that disorder in conjunction with her disability-discrimination claim.  Even if she had, she does not tie any of the defendants' actions to Charles's alleged disabilities.

[76] *Carrico v. City & Cnty of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011) (finding that leave to amend may be denied if amendment would be futile).

16

Disabilities Act" (ADA).[77] Throughout his narrative pleading, he mentions that he is an alcoholic and suffers from an autoimmune condition. He blames Lenard and various others for causing his conditions, either because he was badly treated while he was a child or because they caused stressful conditions in his adult years.[78] But he does not allege in any fashion that Lenard or LVL denied him any rights—of employment, housing, or otherwise—*because of* his alleged disabilities. Charles provides a full account of the wrongs he alleges that he's suffered at the hands of the defendants, and nowhere in that account does he state any facts that could be read to support an ADA or any federal claim. So I dismiss Charles's cross-claims without leave to amend because any such amendment would be futile. And I deny as moot Lenard and LVL's motion for dismissal as a sanction for filing a frivolous complaint because all of Charles's claims have now been dismissed.

**D.     Charles's motion for sanctions and motion to seal are denied.**

Charles also filed a motion to sanction Lenard's attorneys for filing a motion seeking clarification of a previous minute order and a motion to dismiss Charles's cross-claims. He contends that the minute order at issue was "clear and concise" and that the motion to clarify was somehow "a delay tactic to extend the time required to" respond to Charles's cross-claim.[79] And he takes issue with Lenard's motion to dismiss, arguing that, because the motion does not "mention[] FRCP 13"—the federal rule of civil procedure governing counterclaims and cross-claims—and instead analyzes the cross-claim using legal standards developed for dismissal of a complaint, it violates an attorney's obligations under FRCP 11.[80]

---

[77] ECF No. 28 at 3.

[78] *See generally id.*

[79] ECF No. 65 at 2.

[80] *Id.*

1       The defendants argue that the motion must be denied because Charles did not comply with FRCP 11's safe-harbor provision.[81] Rule 11 states that a motion must be served on the offending party but "must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected with 21 days after service."[82] The Ninth Circuit "enforce[s] this safe[-]harbor provision strictly,"[83] and Charles concedes that he did not abide by it.[84] So I deny his motion for sanctions on this basis and do not reach the merits of his arguments in support.[85]

      On January 17, 2023, Charles filed a "notice of continuing 42 U.S.C. § 3617 violations" along with a motion to seal more than 100 pages of financial records.[86] As Charles has been warned before, exhibits may only be filed in support of another properly filed document, and this district's local rules note that "a party may not file supplemental pleadings, briefs, authorities, or evidence without leave of court granted for good cause."[87] Charles's "notice" is best characterized as a supplement to his earlier emergency motion, and he was not granted leave to file such a supplement. Even if he had, Charles does not address the legal standards for sealing

---

[81] ECF No. 68 at 3.

[82] Fed. R. Civ. P. 11(c)(2).

[83] *Holgate v. Baldwin*, 425 F.3d 671, 678 (9th Cir. 2005).

[84] ECF No. 72 at 1 (noting that he "agrees with the Loper defendants . . . that [he] missed the 21[-]day notification thing").

[85] In their response to Charles's motion, the defendants also request that the court hold a competency hearing for Charles and Katalin, arguing that there is a "substantial question regarding [their] mental competence." ECF No. 68 at 5–6. I decline to rule on that request both because it was not filed as a separate motion as required by Local Rule IC 2-2(b) and because the dismissal of all claims moots the request.

[86] ECF No. 76; ECF No, 77; ECF No. 78.

[87] L.R. 7-2(g).

documents or explain what relevance these documents have to his claims. So I deny Charles's motion to seal and strike the exhibit from the record.

**E.     Katalin and Charles's motion for emergency relief is denied.**

On January 10, 2023, Katalin and Charles jointly filed a "emergency motion against opposing counsel and [the] Loper [d]efendants for ongoing [v]iolations of [the] Fair Housing Act."[88] They claim that Lenard's attorneys sent Charles a letter claiming that Charles has illegally remained in Lenard's rental home despite his eviction from the property and offering to "work this issue out amicably."[89] The letter informs Charles that, if he "want[s] to stay in the house, [he] must cease and desist all defamatory statements[] and rescind the false, outrageous, inflammatory[,] and derogatory statements[] he continue[s] to include in [his] public legal filings" and "show [his] family that [he] is making meaningful effort to address [his] alcohol] addiction."[90] Katalin and Charles contend that these efforts to evict Charles unless he retracts statements about his family are a violation of 42 U.S.C. § 3617, which prohibits landlords from interfering with the enjoyment of a tenant's housing rights.

But because Katalin and Charles have been unable to allege facts demonstrating that any particular federal housing right is being violated by the defendants, I do not consider this motion for relief, as there are no remaining claims in this action that can be remedied. And Katalin and Charles's attempt to bring new allegations into this case by way of an "emergency motion" is improper. As explained *supra*, all factual allegations underlying a plaintiff's or cross-claimant's complaint must be contained in a single pleading without reference to other documents.[91] At this

---

[88] ECF No. 74 at 1.

[89] ECF No. 74-4 at 1–2 (letter from Anthony Sgro, Esq.).

[90] *Id.* at 2.

[91] *See supra* at p. 14.

stage, the parties have had plenty of opportunities to clarify their claims and have been unable to plead a federal cause of action. The information they provide in their emergency motion does not correct those deficiencies, so I deny it and close this case.

### Conclusion

IT IS THEREFORE ORDERED that Katalin Bloodgood-Loper's objection to the magistrate judge's order **[ECF No. 51] is OVERRULED**.

IT IS FURTHER ORDERED that Charles Utz Loper's motion for sanctions **[ECF No. 65] is DENIED**.

IT IS FURTHER ORDERED that the "emergency motion for relief from ongoing threats" **[ECF No. 74] is DENIED**.

IT IS FURTHER ORDERED that the defendants' motion to sanction Charles Utz Loper **[ECF No. 75] is DENIED**.

IT IS FURTHER ORDERED that Charles Utz Loper's motion to seal **[ECF No. 77] is DENIED.** The **Clerk of Court is directed to STRIKE ECF No. 78** from the docket.

IT IS THEREFORE ORDERED that Lenard Loper's and Judge Mercer's motions to dismiss **[ECF Nos. 41, 43, 45] are GRANTED** and plaintiff Katalin Bloodgood-Loper's liberally construed motion for leave to amend **[ECF No. 48] is DENIED**. Plaintiff Katalin Bloodgood-Loper's fourth-amended complaint and cross-claimant Charles Utz Loper's cross-claim are **DISMISSED without leave to amend**. The **Clerk of Court is directed to ENTER JUDGMENT ACCORDINGLY and CLOSE THIS CASE**.

_____
U.S. District Judge Jennifer A. Dorsey
January 23, 2023